# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY ALLEN MORRISON, | Case No. 1:22-cv-01559-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| MARTIN O'MALLEY, Commissioner of Social Security,[1] | |
| Defendant. | (Doc. 1) |

## I.  INTRODUCTION

Plaintiff Terry Allen Morrison ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.  BACKGROUND

Plaintiff was born on May 30, 1981, completed high school, and previously worked in food services. (Administrative Record ("AR") 26, 27, 38, 48, 53, 63, 195, 200, 214, 216.) Plaintiff filed

---

[1] On December 20, 2023, Martin O'Malley was named Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] The parties have consented to the jurisdiction of the U.S. Magistrate Judge. (*See* Doc. 11.)

a claim for DIB on January 22, 2019, alleging he became disabled on February 2, 2018, due to arthritis in his thoracic spine, and middle and lower back pain.  (AR 19, 54, 63, 64, 194, 214, 216.)

**A.      Relevant Evidence of Record[3]**

       **1.      Medical Evidence**

In November 2018, Plaintiff presented to an urgent care clinic to discuss his chronic thoracic and lower back pain.  (AR 243–46.)  He reported arthralgias/joint pain, back pain, weakness, numbness, dizziness, and restless legs, but no muscle aches, weakness, swelling, tingling or parasthesias.  (AR 244.)   A "scar in [Plaintiff's] thoracic vertebra from an old injury" was noted. (AR 245.)  A physical examination was normal, with normal gait and station and no cyanosis, edema or varicosities.  (AR 245.)  The provider prescribed a muscle relaxer and ordered X-ray images.  (AR 245.)  The x-ray of Plaintiff's lumbar spine showed mild multilevel degenerative changes.  (AR 251.)  No evidence of acute fracture or malalignment was found, and the vertebral heights were maintained.  (AR 251.)

Plaintiff attended a follow up appointment to review laboratory results in January 2019.  (AR 240–42.)  He continued to complain of chronic low back pain and upper thoracic pain.  (AR 242.) A physical examination was same as the prior appointment (normal).  (AR 242.)  Plaintiff was prescribed medication for his low back pain and referred to physical therapy for pain in his thoracic spine.  (AR 242.)

In February 2019, Plaintiff attended a physical therapy evaluation and complained of worsening back pain.  (AR 396.)  On examination, Plaintiff had "accentuated thoracic kyphosis" at his prior surgical site; mild mid low back pain with flexion; reduced forward bending; mild pain with bilateral thoracic rotation; "decreased passive intervertebral extension" in his thoracic spine; pain with posterior anterior pressure at the right L4 and L5; and tenderness in the right paralumbar musculature.  (AR 396.)

Plaintiff presented for an annual physical examination in March 2019.  (AR 369–72.) Plaintiff's motor strength and tone were normal, with normal movement and no tenderness.  (AR

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

371.) He had decreased sensation in his left lower limb. (AR 371.) In May 2019, Plaintiff presented for a three-month follow up appointment to review medical issues and laboratory results, and to discuss his plan of care. (AR 365–69.) His physical examination was normal. (AR 367–68.) Plaintiff presented to the emergency department in December 2019 complaining of lower back pain radiating down to his right lower extremity. (AR 391.) Right lower lumbar tenderness was noted, but the remainder of his physical examination was normal, with normal motor sensation. (AR 391.)

Plaintiff was referred to a spine specialist for his low back and thoracic spine pain that same month. (AR 356–59.) A history of T7-9 laminectomy/instrumentation for thoracic myelopathy was reported. (AR 358.) He reported bilateral low back pain with parasthesias of the left lower extremity, numbness of the right lower extremity, and leg instability. (AR 358.) He also reported numbness, weakness, and heaviness of the arms and hands, along with intermittently dropping items. (AR 358.) A physical examination was normal, with normal muscle strength and tone, normal gait and station, normal sensation and reflexes. (AR 358.) An MRI of Plaintiff's spine was ordered. (AR 358.) An x-ray of Plaintiff's thoracic spine showed mild degenerative disc disease changes with no evidence of acute fractures. (AR 405.)

In May 2020, Plaintiff presented to the emergency department to detox from methamphetamine and alcohol in order to attend an addiction treatment center. (AR 272, 284.) He denied any complaints and had a normal physical examination, including full range of musculoskeletal motion and ambulation with a steady gait. (AR 272, 284.)

Plaintiff presented with musculoskeletal pain in June 2020. (AR 333–37.) On physical examination, Plaintiff had negative anterior and posterior drawer tests and no McMurray sign noted. (AR 335.)

In July 2021, Plaintiff presented for a follow up visit complaining of numbness of the left side and pain in his upper thoracic back. (AR 353, 355.) His physical examination was normal. (AR 355.) Given the increase in pain and complaints of hand numbness, Plaintiff was referred to neurosurgery and an MRI was ordered. (AR 355–56.)

**2.     Opinion Evidence**

In March 2019, E. Wong, M.D., a State agency physician, reviewed the record and assessed

Plaintiff's residual functional capacity (RFC).[4]  (AR 57–59.)  Dr. Wong found that Plaintiff could perform medium exertional work and could frequently climb, balance, stoop, kneel, crouch, and crawl.  (AR 58–59.)  Upon reconsideration in February 2021, another State agency physician, W. Jackson, M.D., reviewed the record and agreed with Dr. Wong's assessment, except they found that Plaintiff could only occasionally kneel, crouch, and crawl.  (AR 75.)

**B.   Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on March 7, 2019, and again on reconsideration on February 25, 2021.  (AR 19, 81–84, 92–97.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 163–64.)  The ALJ conducted a hearing on February 17, 2021.  (AR 98–126.)  Plaintiff appeared at the hearing with their attorney representative and testified as to their alleged disabling conditions and work history.  (AR 38–46.)  A Vocational Expert ("VE") also testified at the hearing.  (AR 46–52.)

    **1.   Plaintiff's Testimony**

Plaintiff testified he is able to bathe himself, and cook, clean, and wash laundry for himself.  (AR 41–42.)  He has difficulty putting on his shoes and needs help going grocery shopping.  (AR 42.)  He also testified that he uses methamphetamine every day, which causes problems mentally and makes his physical pain worse.  (AR 42–43.)  According to Plaintiff, it is difficult to sit while driving and that his legs will "jerk around a little bit."  (AR 42, 43.)  He testified he can stand for 10 minutes before needing to sit and rest, can walk a full block, and can sit for 20 minutes before needing to stand.  (AR 43–44.)  Plaintiff further testified he drops objects due to numbness and tingling in his hands.  (AR 44–45.)  In addition, he testified that it is difficult to button pants and these symptoms are worse in his right hand.  (AR 45.)  He was recommended to undergo an MRI for back pain but he could not complete it due to claustrophobia.  (AR 46.)

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"  *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

### 2. VE's Testimony

The VE testified that Plaintiff had past work as a cook, prep cook, and a food service worker. (AR 47–48.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and past work history. (AR 48–49.) The VE was also to assume this person is capable of performing light exertional work; no climbing of ladders, ropes, and scaffolding; occasional climbing of ramps and stairs; occasional stooping; frequent kneeling, crouching, crawling, and balancing; occasional pushing and pulling with the left lower extremity; no work at unprotected heights or around dangerous machinery; the individual will be able to perform simple tasks with occasional interaction with others; and the individual will have the option to sit for 10 minutes after every one hour of standing as long as the individual is not off task or away from the workstation. (AR 49.) The VE testified that such a person could not perform Plaintiff's past work, but could perform other light jobs in the national economy, such as sub assembler, Dictionary of Operational Titles (DOT) code 729.684-054 with a specific vocational preparation (SVP)[5] of 2; bench assembler, DOT code 70.684-022 with an SVP of 2; and "solderer," DOT code 813.684-022 with an SVP of 2. (AR 49.) The additional limitation that such a person would not be able to operate foot controls with the right foot would not change the VE's conclusion. (AR 50.)

The VE testified that, were the exertional level reduced to sedentary, a person with the above-described limitations could perform the following jobs: document preparer, DOT code 249.587-018 with an SVP of 2; cutter and paster for press clippings, DOT code 243.587-014 with an SVP of 2; and addresser, DOT code 209.587-010 with an SVP of 2. (AR 50.) In addition to the above-described limitations, a requirement of two 15-minute breaks in addition to customary breaks during the course of the workday, where the individual would be off task and away from the workstation, would be work preclusive. (AR 50–51.) The VE further testified that a limitation to frequent bilateral handling at the sedentary level would also be work preclusive. (AR 51)

---

[5] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

## C. The ALJ's Decision

In a decision dated August 30, 2021, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 19–28.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 21–28.) The ALJ decided that Plaintiff met the insured status requirements of the Act through March 31, 2023, and he had not engaged in substantial gainful activity since February 2, 2018, the alleged onset date (step one). (AR 21.) At step two, the ALJ found Plaintiff's following impairments to be severe: degenerative disc disease of the lumbar spine; chronic insertional fiber microtears of the left posterior cruciate ligament (PCL) and bursitis; "cavus deformity of the right foot"; enthesophyte of the right Achilles tendon; obesity; anxiety; and methamphetamine abuse. (AR 21–22.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 22–23.)

The ALJ then assessed Plaintiff's RFC and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light exertional work as defined in 20 CFR [§] 404.1567(b), except with the option to sit for 10 minutes after every 1 hour of standing as long as he is not off task or away from the workstation; no climbing of ladders, ropes, or scaffolding; occasional climbing of ramps or stairs; occasional stooping; frequent kneeling, crouching, crawling, and balancing; occasional pushing and pulling with the left lower extremity; no work at unprotected heights or around dangerous machinery; no operation of foot controls with the right foot; and simple tasks with occasional interaction with others.

(AR 23–26.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause some of the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 24.)

The ALJ determined that, given his RFC, Plaintiff could not perform his past relevant work (step four), but he could perform a significant number of other jobs in the local and national

6

economies (step five). (AR 26–28.) The ALJ concluded that Plaintiff was not disabled from February 2, 2018, through the date of the decision. (AR 29.)

Plaintiff sought review of the decision before the Appeals Council, which denied review on October 6, 2022. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981

### III.     LEGAL STANDARD

**A.     Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if [they are] unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or

7

'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff contends that the ALJ committed harmful error in three ways: by not finding Plaintiff's hand numbness "severe" at step two; by failing to develop the record to obtain opinion evidence, resulting in an unsupported RFC; and by improperly discounting Plaintiff's subjective symptom complaints. (*See* Doc. 17; Doc. 20.) The Court addresses Plaintiff's contentions below, and finds that reversal is not warranted.

**A.   The ALJ Did Not Commit Prejudicial Error at Step Two**

   **1.   Legal Standard**

At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c). A severe impairment is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities." *Id.* An ALJ must consider all the evidence at step two to determine whether a medically determinable impairment significantly limits the claimant's ability to perform basic work activities. *Id.* § 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686–87 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96–3p (1996)). The purpose of step two is to operate as "a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see also Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (the step two finding is "merely a threshold determination" that "only raises a prima facie case of a disability."); *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017) ("Step two is

merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be considered when determining the RFC.") (internal citations omitted).

**2. Analysis**

After specifying Plaintiff's severe impairments at step two, the ALJ found that "[a]ll other impairments besides those enumerated [], alleged and found in the record, are non-severe or not medically determinable as they have been responsive to treatment, cause no more than minimal vocationally relevant limitations, have not lasted or are not expected to last at a 'severe' level for a continuous period of 12 months, are not expected to result in death, or have not been properly diagnosed by an acceptable medical source." (AR 22.) Plaintiff asserts that the ALJ's failure to specifically address his hand numbness as one of those "other impairments" is erroneous. Even if so, however, such error was at most harmless.

A claimant is prejudiced at step two by an ALJ's omission of an impairment only where that step is not resolved in the claimant's favor. *See Burch*, 400 F.3d at 682 ("Here, the ALJ did not find that Burch's obesity was a 'severe' impairment . . . . Assuming without deciding that this omission constituted legal error, it could only have prejudiced Burch in step three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor."); *see also Hickman v. Comm'r*, 399 F. App'x 300, 302 (9th Cir. 2010) ("Any error in the ALJ's failure to include a reading disorder as one of Hickman's severe impairments at step two of the analysis is harmless. The ALJ found Hickman suffered from other severe impairments and, thus, step two was already resolved in Hickman's favor."). Additionally, the failure to include an impairment in the step two analysis is harmless if the ALJ considers the functional limitations that flow from said impairment in subsequent steps. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that ALJ's failure to list plaintiff's bursitis as a severe impairment at step two was harmless where ALJ considered limitations caused by the condition at step four); *see also Molina*, 674 F.3d at 1115 (error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination").

First, step two was resolved in Plaintiff's favor when the ALJ determined that his severe impairments included degenerative disc disease of the lumbar spine; chronic insertional fiber

microtears of the left PCL and bursitis; "cavus deformity of the right foot"; enthesophyte of the right Achilles tendon; obesity; anxiety; and methamphetamine abuse and the ALJ proceeded to the step three analysis. (AR 20–22.) It follows that, since Plaintiff's claims were not screened out at this step, he was not prejudiced by any error in the step two analysis. *Buck*, 869 F.3d at 1049 ("[S]tep two was decided in Buck's favor after both hearings. He could not possibly have been prejudiced. Any alleged error is therefore harmless and cannot be the basis for a remand.")

Next, the ALJ went on to state that they had "considered all symptoms" in making their RFC finding. (AR 24; *see, e.g., Sara Ann W. v. Comm'r of Soc. Sec.*, No. 2:17-CV-00277-RHW, 2018 WL 4088771, at *4 (E.D. Wash. Aug. 27, 2018) ("[T]he ALJ specifically noted that she considered all symptoms in assessing the residual functional capacity. Accordingly, the Court finds the ALJ did not err in the step two analysis, and if any error did occur it was harmless.").) The ALJ's decision makes clear that they considered Plaintiff's complaints of hand numbness. (AR 24 (noting Plaintiff's testimony that he "drops objects due to numbness and tingling in his hands" and that "it is difficult to button, and these symptoms are worse in his right hand.").) *See Lewis*, 498 F.3d at 911 (finding that ALJ's error in not including bursitis as a severe impairment at step two was harmless in light of further analysis of that condition in the RFC).

Finally, Plaintiff has not met his burden of demonstrating from the record that his hand numbness significantly limits his ability to perform basic work activities. *See Webb*, 433 F.3d at 686–87 (explaining that impairments are non-severe if they have no more than a minimal effect on a claimant's ability to work). *See also Bowen*, 482 U.S. at 146 n.5 (the plaintiff bears the burden at step two). The only evidence proffered by Plaintiff in support of a finding of severity is a diagnosis of hand numbness and his hearing testimony that he had difficulty handling objects. (Doc. 17 at 8 (citing AR 45); Doc. 20 at 4 (citing AR 355–56).) The mere diagnosis of an ailment is insufficient to establish a severe impairment. *See Febach v. Colvin*, 580 F. App'x 530, 531 (9th Cir. 2014) ("[D]iagnosis alone is insufficient for finding a 'severe' impairment, as required by the social security regulations."); *Holaday v. Colvin*, No. 2:14-cv-1870-KJN, 2016 WL 880971, at *12 (E.D. Cal. Mar. 8, 2016) ("The mere fact that plaintiff was diagnosed with such conditions is, by itself, insufficient to demonstrate that they were 'severe' for step two purposes."). And, as discussed more

fully below (*see* Section IV.C, *infra*), the ALJ properly discredited Plaintiff's subjective complaints; but even if they had not, such complaints alone cannot establish severity. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).

The Court therefore finds no harmful error at step two.

**B.      The ALJ Had No Duty to Develop the Record to Assess Plaintiff's RFC**

      **1.      Legal Standard**

An RFC "is the most [one] can still do despite [their] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). An ALJ's RFC determination need not precisely reflect any particular medical provider's assessment. *See Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity").

In making the RFC determination, the ALJ considers those limitations for which there is record support that does not depend on properly rejected evidence and subjective complaints. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Ford,* 950 F.3d at 1156; *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). A reviewing court "will affirm the ALJ's determination of [a claimant's] RFC if the ALJ applied the proper legal standard and [their] decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

      **2.      Analysis**

Here, Plaintiff has not demonstrated that the record was ambiguous or inadequate to allow for proper evaluation. The ALJ summarized record evidence spanning 2018 through 2021 and found, with the support of that record, that Plaintiff had not established he was disabled. (AR 24–26.) The record contained what appears to be Plaintiff's complete treatment records that supported

the ALJ's findings and did not present an ambiguity or inadequacy. Notably, Plaintiff failed to submit any medical opinions from a treating or examining physician as to his ability to work or his functional limitations related to his impairments. Because it is Plaintiff's burden to present evidence of disability, the mere absence of a report from a treating or examining physician does not give rise to a duty to develop the record; instead, that duty is triggered only where there is an inadequacy or ambiguity. *Bayliss*, 427 F.3d at 1217; *Alvarez v. Astrue*, No. 1:08-cv-01205-SMS, 2009 WL 2500492, at *10 (E.D. Cal. Aug. 14, 2009) (finding absence of report from treating physician did not give rise to a duty to develop the record where record contained opinions of the State agency physicians and plaintiff's complete treatment records); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1512 ("In general, you have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled.").

That the ALJ did not obtain a consultative examination regarding Plaintiff's condition is not, as Plaintiff advances, an indication that the record was deficient, as such decisions are well within the ALJ's discretion. *See Pederson v. Colvin*, 31 F. Supp. 3d 1234, 1244 (E.D. Wash. 2014) ("[T]he Commissioner 'has broad latitude in ordering a consultative examination.'") (quoting *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001)). *See Albrecht v. Astrue*, No. 1:11-cv-01319 GSA, 2012 WL 3704798, at *12 (E.D. Cal. Aug. 27, 2012) (Consultative examination regarding Plaintiff's impairments "not necessary" where the existing evidence was sufficient to support the ALJ's determination and such an exam was not needed to resolve an inconsistency). Nor is an "updated medical opinion" required merely because additional medical evidence is received after the State agency physicians had already reviewed Plaintiff's records. *See de Hoog v. Comm'r of Soc. Sec.*, No. 2:13–CV–0235–KJN, 2014 WL 3687499, at *7 (E.D. Cal. July 23, 2014). Such an occurrence is quite common. *See id.* (explaining that "[i]n virtually every case further evidence is received after the [S]tate agency physicians render their assessments—sometimes additional evidence and records are even received after the ALJ hearing. For that very reason, the ALJ is tasked with considering the evidence in the record as a whole.").

13

Plaintiff cites *Stevenson v. Colvin,* in which a duty to develop the record arose (*see* Doc. 17 at 6), but that case is distinguishable because it involved subsequence evidence of a worsening condition. *See id.*, No. 2:15-CV-0463-CKD, 2015 WL 6502198, at *4 (E.D. Cal. Oct. 27, 2015) (holding that the ALJ erred in adopting the functionality opinion of a non-examining State agency physician, an opinion which pre-dated "plaintiff's treating records regarding the ***progression*** of his spinal impairments, which were developed after the date of Dr. Pancho's opinion.") (emphasis added). Here, none of evidence Plaintiff directs the Court to consider show a worsening of his existing conditions. *See Smith v. Saul*, No. 1:19-CV-01085-SKO, 2020 WL 6305830, at *8 (E.D. Cal. Oct. 28, 2020) (finding ALJ had no duty to develop record because "[n]one of these [additional] records establish the existence of any new condition not assessed by the ALJ, or show a worsening of Plaintiff's existing conditions."); *Hernandez v. Saul*, No. 1:19-CV-01298-GSA, 2020 WL 6700224, at *8 (E.D. Cal. Nov. 13, 2020) (same, distinguishing *Stevenson*). The Court therefore finds that the ALJ was not obligated to further develop the record.

Plaintiff also contends that because the State agency physicians Drs. Wong and Jackson, on whose opinions the ALJ relied, did not consider subsequent records, the RFC was the result of the ALJ improperly imposing their own lay interpretation of "raw medical data." (*See* Doc. 17 at 6–7; Doc. 20 at 3.) This argument is also unavailing. The nature of the ALJ's responsibility is to interpret the evidence of record, including medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Such a responsibility does not result in the ALJ committing legal error when they assess an RFC that is consistent with the record. *See Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 (E.D. Cal. Aug. 22, 2014) ("[I]t is the ALJ's responsibility to formulate an RFC that is based on the record as a whole, and thus the RFC need not exactly match the opinion or findings of any particular medical source.") (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989)). *See also* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."); *id*. § 404.1546(c) ("[T]he administrative law judge . . . is responsible for assessing your residual functional capacity.").

Here, the ALJ considered not only the opinions of the State agency physicians (*see* AR 26 (citing AR 58–59, 75)), but also evaluated the objective medical evidence post-dating their opinions,

14

including that which Plaintiff cites in his briefing.  (*See* AR 24–26 (discussing records showing Plaintiff's thoracic spine pain and testimony regarding hand numbness).)  The ALJ, as they are charged to do, then analyzed the persuasiveness of those opinions, deeming them "partially persuasive" in light of the longitudinal record (a determination Plaintiff does not challenge), ultimately formulating an RFC with greater limitations than those opined by the State agency physicians.  These additional restrictions further accounted for Plaintiff's impairments based on treatment records showing "decreased sensation, tenderness, deformity of the right foot, and obese body mass index readings." (AR 26.)  The ALJ also considered Plaintiff's hearing testimony that he bathed himself, and cooked, cleaned, and washed laundry.  (AR 26).  The ALJ was entitled to review and interpret this evidence—none of it constituted "raw medical data."  *See, e.g., Ann M. v. Berryhill*, No. 5:18-CV-01080-KES, 2019 WL 1171160, at *6 (C.D. Cal. Mar. 12, 2019) ("Contrary to the cases cited by Plaintiff, the records in this case provided the ALJ with ample support for his RFC, which was based not on raw data but on treatment notes, which included Plaintiff's subjective complaints, observations by physicians, and the treatment plans.") (internal quotation marks omitted) (distinguishing *Cortez v. Colvin*, No. 15-00102, 2016 WL 3541450, at *6 (E.D. Cal. June 24, 2016)); *Mills,* 2014 WL 4195012, at *4 (finding argument that the ALJ was improperly attempting to "play doctor" lacked merit where the ALJ "carefully analyzed the various medical opinions, treatment records, and plaintiff's own testimony in formulating an RFC.").  *Cf. Escudero v. Comm'r of Soc. Sec.*, No. 1:18-CV-01136-EPG, 2019 WL 4917634, at *2 (E.D. Cal. Oct. 4, 2019) (finding the ALJ erred where descriptions of some of the medical evidence post-dating the opining physicians' opinions was not "self-evident" and instead "appear[ed] to be very medical in nature and not susceptible to a lay understanding.").

Plaintiff does not specify what additional functional limitations in the evidence that he directs the Court to review were not accounted for in the ALJ's RFC assessment.  Nor does he otherwise show any inconsistency between this evidence and his RFC.  It appears that Plaintiff is advocating for an alternative interpretation of the evidence he cites in his briefing.  The Court, however, will not second guess the ALJ's reasonable interpretation, even if such evidence could give rise to inferences more favorable to Plaintiff.  *See Molina*, 674 F.3d at 1110.

In sum, the Court does not find error in a failure to develop the record to obtain a consultative examination or in the ALJ's reliance on the opinions of the State agency physicians and further finds that substantial evidence supports the ALJ's conclusions regarding the impact of Plaintiff's impairments on the RFC. Plaintiff may disagree with the RFC, but the Court must nevertheless uphold the ALJ's determination because it is a rational interpretation of the evidence. *See Ford*, 950 F.3d at 1159 ("Our review of an ALJ's fact-finding for substantial evidence is deferential"); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**C.     The ALJ Properly Found Plaintiff Less Than Fully Credible**

   **1.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. The claimant is not required to show that [their] impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[6] *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties

---

[6] The Court rejects the Commissioner's contention that a lesser standard of review applies. (*See* Doc. 19 at 10 n.2.)

16

concerning the nature, severity, and effect of the symptoms of which they complain. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**2.     Analysis**

As noted above, the ALJ found Plaintiff's impairments "could reasonably be expected to cause some of the alleged symptoms[,]" yet rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 24.) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

Here, the ALJ found that evidence in the medical record did not support "further limitations" than those assessed in the RFC. (AR 25, 26.) Had that been the end of the discussion, Plaintiff's argument that the ALJ erred by "fail[ed] to state a clear and convincing reason to reject [his] testimony" (Doc. 17 at 10) might have merit. However, contrary to Plaintiff's assertion, the ALJ continued the analysis, pointing that Plaintiff's "significant gap in treatment," his ability to engage in certain daily activities, and his "receipt of unemployment" all detract from his credibility and suggest he retains more ability than alleged. (AR 25, 26.)

First, the ALJ noted that the "medical record reveals no treatment for [Plaintiff's] impairments for nearly 9 months after the alleged date of disability." (AR 25.) "An ALJ may properly discount a plaintiff's credibility based on an unexplained failure to seek treatment consistent with the alleged severity of the subjective complaints." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). Plaintiff does not explain his lack of treatment during this time period.

It is also appropriate for an ALJ to consider a claimant's activities that undermine claims of

17

severe limitations in making the credibility determination. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas*, 278 F.3d at 958–59 (an ALJ may support a determination that the claimant was not entirely credible by identifying inconsistencies between the claimant's complaints and the claimant's activities.). It is well-established that a claimant need not "vegetate in a dark room" to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). However, if a claimant can spend a substantial part of their day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disability. *Fair*, 885 F.2d at 603. "Even where [Plaintiff's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Plaintiff alleges an inability to work due to pain in his back and numbness in his hands. (AR 44–45, 194.) According to Plaintiff, he can stand for only 10 minutes before needing to sit and rest and can sit for 20 minutes before needing to stand. (AR 43–44.) Despite these alleged limitations, Plaintiff testified he is able to bathe himself, and cook, clean, and wash laundry for himself. (AR 41–42.) The Court finds that these activities were reasonably considered by the ALJ to be inconsistent with Plaintiff's alleged inability to work due to back and hand impairments, and such inconsistency was another clear and convincing reason to find his testimony not credible. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); 20 C.F.R. § 404.1529(c)(3).

Finally, the ALJ appropriately noted that Plaintiff received unemployment insurance benefits in the third and fourth quarters of 2020, after his alleged onset date. (AR 26 (citing AR 190).) Though receipt of unemployment benefits is not dispositive of a person's capacity to perform work, it does conflict with assertions of an inability to work because receipt of unemployment insurance benefits was premised on an individual's attestation that he was ready, willing, and able to work. *See Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988) (ALJ validly discounted claimant's credibility, in part, because he "received unemployment insurance benefits [after being laid off] (apparently considering himself capable of work and holding himself out as available for work").

Plaintiff's briefing does not address his receipt of unemployment benefits, and therefore he does not dispute that he intended to return to work at the time he collected them, after his alleged onset date.

In sum, the Court finds that the ALJ offered multiple clear and convincing reasons to discredit Plaintiff's testimony regarding the extent of his limitations. While Plaintiff may disagree with the ALJ's interpretation of the medical evidence (*see* Doc. 17 at 9), it is not within the province of this Court to second-guess the ALJ's reasonable interpretation of that evidence, even if such evidence could give rise to inferences more favorable to Plaintiff. *See Rollins*, 261 F.3d at 857 (citing *Fair*, 885 F.2d at 604).

## V.     CONCLUSION AND ORDER

After consideration of Plaintiff's and the Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Martin O'Malley, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:     **January 2, 2024**                       /s/ *Sheila K. Oberto*
                                                                        UNITED STATES MAGISTRATE JUDGE